721 S.E.2d 786

**The STATE, Appellant,**

v.

**John Porter JOHNSON, Respondent.**

**No. 4927.**

Court of Appeals of South Carolina.

Heard Nov. 3, 2011.

Decided Jan. 4, 2012.

Rehearing Denied Feb. 16, 2012.

426

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Mark R. Farthing, all of Columbia; and Solicitor Barry J. Barnette, of Spartanburg, for Appellant.

Ralph Keith Kelly, of Spartanburg, for Respondent.

HUFF, J.

The State appeals an order of the circuit court reversing John Porter Johnson's conviction of driving under the influence (DUI) on the basis of an alleged insufficiency in the number of potential jurors from which to draw a jury for Johnson's trial in magistrate court. We reverse the circuit court order and reinstate Johnson's conviction.

## FACTUAL/PROCEDURAL BACKGROUND

The facts of this case are undisputed. Johnson was arrested on August 24, 2008, and charged with DUI. His case was called to trial on February 22, 2010, and was the first case on the docket for that week. Prior to the term of court, pursuant to section 22–2–90 of the South Carolina Code, the magistrate drew seventy-five names for jury service, and issued a writ of venire facias requiring the jurors' attendance on February 22, 2010, for a one week term of court. On the morning of

February 22, 2010, thirty-nine of the seventy-five summoned jurors appeared. During jury qualifications, the magistrate excused six of those thirty-nine, leaving thirty-three jurors from which to select the petit jury for Johnson's trial. Johnson objected to being required to select from a jury pool of less than forty jurors, asserting a failure of the court to comply with code section 22–2–90(B), and sought a continuance. The magistrate overruled the objection and denied the motion for continuance. A six-member jury was drawn, and neither Johnson nor the State extinguished the list of remaining jurors in seating the jury. The case proceeded to trial, and Johnson was convicted.

Johnson filed a notice of appeal to the circuit court asserting the magistrate erred in overruling his objection to going forward with an insufficient number of jurors available, because section 22–2–90 required a minimum of forty jurors. Johnson maintained the magistrate should have granted him a continuance until a sufficient number of jurors could be assembled in accordance with section 22–2–120 of the South Carolina Code. In his argument before the circuit court, Johnson asserted that the legislature provided that a specific number of jurors are required to be present in magistrate court. He argued that the practice being followed in other jurisdictions in the state was to cancel a jury term where "there were insufficient number being less than 40(forty)." Johnson insisted that he should have had forty jurors to choose from for his jury, and the magistrate erred in making him go forward when there were only thirty-three available. The State, on the other hand, argued that section 22–2–90 required only that the magistrate draw at least forty and not more than one hundred jurors, and there is a distinction between the number of jurors drawn and the number of jurors selected. It argued there were more than sufficient jurors to meet subsection (B) of 22–2–90, as seventy-five were drawn where the statute only required that forty be drawn. Additionally, the State asserted there were sufficient jurors available to ensure that each side would receive its maximum strikes and still have enough jurors available to seat a six-member jury.

The circuit court took the matter under advisement and later issued an informal order reversing Johnson's conviction, but indicated a more formal order would be prepared that

would become the final order of the court. The court subsequently issued a written order reversing Johnson's conviction. It concluded, after reviewing sections 22–2–20 through 22–2–150 of the South Carolina Code, and applying basic rules of statutory construction to determine legislative intent, the number of jurors available for jury selection fell below the statutory minimum number required. The circuit court found the random selection method intended by the legislature would not be accomplished when, in advance of the random selection, there is an insufficient number from which to choose. Accordingly, the circuit court concluded the magistrate erred as a matter of law in overruling Johnson's objection, denying his motion for continuance, and requiring the parties to proceed to jury selection and trial. This appeal followed.

## ISSUE

Whether the circuit court erred in reversing Johnson's conviction based on an alleged insufficiency in the number of potential jurors present for selection where the magistrate properly drew the names of seventy-five jurors in compliance with section 22–2–90 of the South Carolina Code, a qualified jury panel was selected from the available jury pool, and Johnson suffered no prejudice from the jury selection process as conducted.

## STANDARD OF REVIEW

"In criminal appeals from magistrate or municipal court, the circuit court does not conduct a de novo review, but instead reviews for preserved error raised to it by appropriate exception." *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct.App.2001). In criminal cases, the appellate court reviews errors of law only. *City of Rock Hill v. Suchenski*, 374 S.C. 12, 15, 646 S.E.2d 879, 880 (2007). Accordingly, this court's scope of review is limited to correcting the circuit court's order for errors of law. *Id.*

## LAW/ANALYSIS

The State contends the circuit court erred in reversing Johnson's conviction, as a qualified jury was properly empaneled and the magistrate properly exercised his discretion in denying Johnson's motion for continuance. We agree.

 "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007). If it can be reasonably discovered in the language used, legislative intent must prevail. *Id.* The language of a statute must be construed in light of the intended purpose of the statute, and whenever possible, legislative intent should be found in the plain language of the statute itself. *State v. Gaines*, 380 S.C. 23, 33, 667 S.E.2d 728, 733 (2008). Additionally, statutes which are part of the same legislative scheme should be construed together. *Stardancer Casino, Inc. v. Stewart*, 347 S.C. 377, 383, 556 S.E.2d 357, 360 (2001). In interpreting a statute, the court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation, and the language of the statute should be "read in a sense which harmonizes with its subject matter and accords with its general purpose." *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010). A court must take the statute as it finds it, giving effect to the legislative intent as expressed in the language of the statute, and cannot, under its power of construction, supply an omission in a statute. *State v. White*, 338 S.C. 56, 58, 525 S.E.2d 261, 263 (Ct.App.1999).

A review of Chapter 2 of Title 22 reveals the following pertinent code sections in this matter concerning the selection of juries in magistrate court:

> In October of each year, the State Election Commission must provide to the chief magistrate for administration of each county, at no cost, a jury list compiled in accordance with the provisions of Section 14–7–130. The chief magistrate for administration of the county must use these lists in preparing, for each jury area, a list of the qualified electors in these jury areas, and must forward these lists to the respective magistrates.

S.C.Code Ann. § 22–2–50 (2007).

> A constable or other person appointed by a magistrate shall, during the first thirty days of each calendar year, prepare a jury box for use in the magistrate's court which shall be provided by the governing body of the county. Each box shall contain two compartments designated as A and B

respectively. The person charged with the preparation of the box shall, within the specified period, place in Compartment A of the box the individual names of all qualified electors in the Jury Area. After Compartment A has been filled with names, the box shall be locked and kept in the magistrate's custody.

S.C.Code Ann. § 22-2-60 (2007).

(A) In all cases except as provided in Section 22-2-90 in a magistrates court in which a jury is required, a jury list must be selected in the following manner:

A person appointed by the magistrate who is not connected with the trial of the case for either party must draw out of Compartment "A" of the jury box at least thirty but not more than one hundred names, and this list of names must be delivered to each party or to the attorney for each party.

(B) If a court has experienced difficulty in drawing a sufficient number of jurors from the qualified electors of the area, and, before implementing a process pursuant to this subsection, seeks and receives the approval of South Carolina Court Administration, the person selected by the presiding magistrate may draw at least one hundred names but not more than a number determined sufficient by court administration for the jury list, and must deliver this list to each party or the attorney for each party.

S.C.Code Ann. § 22-2-80 (2007).

(A) In addition to the procedure for drawing a jury list as provided for in Section 22-2-80, in a magistrates court which schedules terms for jury trials, the magistrate may select a jury list in the manner provided by this section.

(B) At least ten but not more than forty-five days before a scheduled term of jury trials, a person selected by the presiding magistrate must draw at least forty but not more than one hundred jurors to serve one week only.

(C) If a court has experienced difficulty in drawing a sufficient number of jurors from the qualified electors of the area, and, before implementing a process pursuant to this subsection, seeks and receives the approval of South Carolina Court Administration, the person selected by the presiding magistrate may draw at least one hundred names but not more than a number determined sufficient by court administration to serve one week only.

(D) Immediately after the jurors are drawn, the magistrate must issue a writ of venire facias for the jurors requiring their attendance on the first day of the week for which they have been drawn. This writ must be delivered to the magistrate's constable or the sheriff of the county concerned.

S.C.Code Ann. § 22–2–90 (2007).

The names drawn pursuant to either Section 22–2–80 or Section 22–2–90 must be placed in a box or hat and individual names randomly drawn out one at a time until six jurors and four alternates are selected. Each party has a maximum of six peremptory challenges as to primary jurors and four peremptory challenges as to alternate jurors and any other challenges for cause the court permits. If for any reason it is impossible to select sufficient jurors and alternates from the names drawn, names must be drawn randomly from Compartment "A" until sufficient jurors and alternates are selected.

S.C.Code Ann. § 22–2–100 (2007).

If at the time set for the trial there are not sufficient jurors to proceed because one or more have failed to attend, have not been summoned, or have been excused or disqualified by the court, additional jurors must be selected from the remaining names or in the manner provided in Section 22–2–80 or Section 22–2–100.

S.C.Code Ann. § 22–2–120 (2007).

In summary, our statutes require a constable or other person appointed by a magistrate to prepare a jury box for use in the magistrate court, which contains two compartments, designated as A and B, and to place in Compartment "A" of the box the individual names of all qualified electors in the Jury Area. S.C.Code Ann. § 22–2–60 (2007). Except where jurors are drawn for a weeklong term of court under section 22–2–90, the person appointed by the magistrate must draw out of Compartment "A" of the jury box at least thirty but not more than one hundred names, with this list then delivered to each party or to the parties' attorneys. S.C.Code Ann. § 22–2–80(A) (2007). Where a magistrate court schedules terms for jury trials, the procedure to follow is similar to that of section 22–2–80, but requires that the person selected by the presiding magistrate draw at least forty, but not more than one

hundred, jurors to serve a one week term. S.C.Code Ann. § 22–2–90(B) (2007). Like section 22–2–80, section 22–2–90 includes a provision that if the court has experienced difficulty in drawing a sufficient number of jurors from the qualified electors of the area, it may seek the approval of South Carolina Court Administration to allow the person selected by the presiding magistrate to draw a minimum of one hundred names to serve. S.C.Code Ann. §§ 22–2–80(B) (2007); 22–2–90(C) (2007). Whether drawing names pursuant to section 22–2–80 or, as in this case, for a weeklong term of court pursuant to section 22–2–90, the individual names must be randomly drawn out, one at a time, until six jurors and four alternates are selected, and each party is allowed a maximum of six peremptory challenges as to primary jurors and four peremptory challenges as to alternate jurors. S.C.Code Ann. § 22–2–100 (2007). If it is not possible "to select sufficient jurors and alternates from the names drawn, names then must be drawn randomly from Compartment 'A' until sufficient jurors and alternates are selected." *Id.* "If at the time set for the trial there are not sufficient jurors to proceed because one or more have failed to attend, have not been summoned, or have been excused or disqualified by the court, additional jurors must be selected from the remaining names or in the manner provided in Section 22–2–80 or Section 22–2–100." S.C.Code Ann. § 22–2–120 (2007).

■ We agree with the State that there is no provision in Chapter 2 of Title 22 specifically establishing a minimum number of jurors required to be present in the jury pool before jury selection can proceed. The plain wording of section 22–2–90 requires only that a person selected by the presiding magistrate draw a minimum of forty jurors to serve for a one week term. It does not require that forty jurors be present and available in the jury pool before jury selection can proceed for a trial.

Further, section 22–2–100 mandates the individual names be randomly drawn until six jurors and four alternates are selected, with each party being allowed a maximum of six peremptory challenges as to primary jurors and four peremptory challenges as to alternate jurors. Thus, as noted by the State, allowing for the maximum number of primary (six) and alternate (four) jurors along with the maximum number of combined peremptory challenges (twenty), thirty jurors would be

sufficient to meet such needs. Although it could possibly take every single one of the individual jurors to ultimately seat a jury, the names would still be drawn in random order, with different decisions regarding the parties' choices on whether or not to use their peremptory challenges affecting the ultimate make-up, and therefore allowing for the randomness of the jury.

Additionally, we note that in those cases where the jury is not being selected for a weeklong term of court, section 22–2–80(A) allows the person appointed by the magistrate to draw a minimum of thirty names for a jury trial in magistrate court. If the drawing of only thirty names is sufficient under section 22–2–80, thus allowing for a maximum of thirty potential jurors to present themselves for jury selection in those cases, such a number should likewise be sufficient from which to select a jury under section 22–2–90, as there is no difference in the number of primary and alternate jurors and the number of peremptory strikes available to each party whether drawing names pursuant to section 22–2–80 or pursuant to section 22–2–90. Therefore, construing these statutes, which are part of the same legislative scheme, together, and reading the language of these statutes in a sense which harmonizes with the subject matter and accords with its general purpose, we find the presence of thirty-three jurors in this case was sufficient to select a qualified jury panel from the jury pool.

Johnson and the circuit court effectively read section 22–2–90 as requiring that a minimum of forty individuals *appear* and be available for jury selection, while the plain terms of the statute require only that forty individual names be *drawn and ordered to appear*. Indeed, section 22–2–120 seems to recognize that some of the summoned jurors may fail to appear. However, it is only when "it is impossible to select sufficient jurors and alternates from the names drawn" and "there are not sufficient jurors to proceed because one or more have failed to attend, have not been summoned, or have been excused or disqualified by the court" that steps must be taken to remedy an insufficient jury pool. S.C.Code Ann. §§ 22–2–100; 22–2–120. The legislature has set forth no specified number of jurors required to be present and available in the jury pool before jury selection can proceed. As noted, a court cannot, under its power of construction, supply an omission in a statute. *White,* 338 S.C. at 58, 525 S.E.2d at 263. By

asserting a mandatory minimum of forty jurors are required to be present and available for selection in a magistrate court jury trial, Johnson and the circuit court seek to supply an omission in the statute and expand the statute's operation. Further, we find such an interpretation to be inconsistent with the legislative intent in enacting these statutory provisions. Here, there were sufficient jurors available to ensure that each side would receive its maximum strikes and still have enough to seat a jury. Accordingly, we conclude that the circuit court erred in finding the thirty-three jurors available for jury selection fell below the statutory minimum number required.

In light of our holding in this case, we find it unnecessary to address the State's alternate assertion that, even assuming the magistrate erred in his interpretation of the statutory provisions, the statutory provisions are merely directory and Johnson suffered no prejudice. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

## CONCLUSION

For the foregoing reasons, we reverse and reinstate Johnson's conviction.

**REVERSED.**

PIEPER and LOCKEMY, JJ., concur.